NAHUM STONE Respondent, vs. JACOB MYERS and SUSAN R. MYERS, his wife, Appellants.

APPEAL FROM THE DISTRICT COURT OF SCOTT COUNTY.

Where a Plaintiff has recovered a judgment against a non-resident Defendant, having property in this State, the summons having been served by publication under the statute, the judgment is conclusive upon the question as to whether the Defendant therein had property in the State to give the Court jurisdiction, except in a direct proceeding in the action itself for relief. It cannot be raised in a collateral action.

In such cases it is the property alone that confers the jurisdiction, and then only to the extent of such property; and the judgment would expend itself on the property which conferred or aided in conferring the jurisdiction, and would only embrace such as was within the State at the time the jurisdiction attached. Such a judgment, though in form *in personam*, is, in effect, only a judgment *in rem*.

In order to entitle a creditor to relief against a fraudulent disposition of property by his debtor, he must show himself to have been such creditor *at the time* the act was done which he claims to be in fraud of his rights.

The liability of the obligor in a bond is incurred by the making of the instrument, and the obligor is a debtor by his own acknowledgment under seal, from that time, and until he complies with its conditions.

This was an equitable action, commenced in the Court below, by the Respondent against the Appellants; the following is a state-

ment of the substance of the pleadings: The Plaintiff alleges that, on the 16th December, 1858, the Defendant, Jacob Myers, executed and delivered to Plaintiff a bond conditioned in the sum of $1,500 for the conveyance of certain real estate, upon the payment of the sum of $1,000 upon demand. That, at different times after date of said bond, the Plaintiff had demanded the conveyance of said premises upon performance of conditions, &c., which the Defendant had refused to do.

That in September, 1862, Plaintiff commenced an action against said Defendant, Jacob Myers, in the Court aforesaid, upon said bond; that the summons therein had been duly served upon said Defendant, and that on the 22d day of April, 1863, the Plaintiff recovered judgment therein against said Defendant for $613.75 damages, and $18.94 costs. That the same was duly entered and docketed in said Court, and remains of record, &c., &c.

That said Jacob Myers has not, nor has he had at any time since the commencement of said action, any goods, chattels, &c., in said county, whereof the said judgment could be made, and no interest in any real estate, except in the premises described in the bond.

That about the 16th December, 1858, (the date of the bond,) the Plaintiff sold to said Myers certain other lands, (described in the complaint;) that the agreement for said sale was made with Plaintiff by said Myers, who paid the consideration to this Plaintiff therefor; that such consideration consisted wholly of matters belonging to said Myers, and did not belong or have any connection with any separate estate of said Susan Myers; and that said deed was so made by this Plaintiff and his wife to said Susan Myers, at the request of said Jacob, said Plaintiff not suspecting that the same was so made with the intent (on the part of said Jacob,) of hindering, delaying, or defrauding his creditors.

(The complaint also alleges two other conveyances of real estate to the said Susan, by other parties, upon the same consideration, and with like intent.)

That these several deeds are fraudulent as against this Plaintiff, and that a trust has resulted in favor of the Plaintiff, as a

creditor, to the extent necessary to satisfy his said judgment, &c., &c. Plaintiff demands that these deeds be declared fraudulent as against him; that it be adjudged that a trust has resulted in his favor to the extent of his judgment, and that the lands, or so much thereof as may be necessary, be sold to satisfy such judgment, &c., &c.

The answer of the Defendants alleges that at the time of the commencement of the action referred to in said complaint, and for more than one year prior thereto, said Defendants, and both of them, were and had been citizens of the State of Ohio, and were not, and had not been at any time since, within the State of Minnesota.; and that the summons in said action was not served upon said Jacob Myers in any manner except by publication, &c., in the manner provided for by *secs. 54 and 55, chap. 60, Stats. of Minn.*, and that said Myers had never appeared in said action.

And demands a dismissal of the action. · The reply admits the service of the summons in the manner pleaded in the answer, and alleges that, at the time of the commencement of the said action, the Plaintiff resided in said county of Scott; that Myers was not then a resident of Minnesota, but had property in said county of Scott; that said action arose on obligation contracted in said county, and that Plaintiff had proceeded therein by attachment, issued, levied and returned according to law.

Upon the motion of the Plaintiff's attorney in the Court below, (and upon the Defendants' admission of the issuance and service of a warrant of attachment, as pleaded in the reply,) it was ordered that the Plaintiff have judgment for the relief demanded in the complaint.

The Defendants appeal.


Points and authorities of Appellants.

I.—The pleadings taken together show that the judgment of April 22d, 1863, is not a common law judgment, and is of no validity whatever, except so far as life is infused into it by statute, and that is so far, and so far only, as to enable the judg-

ment creditor to issue an execution upon it, and thereby to reach any property that the judgment debtor had in this State at the time of the commencement of the action in which the judgment was rendered. Such a judgment is entitled to no credit in another State. It is not good evidence in any other proceeding. No action can be maintained upon it in any other court. 4 *Com.*, 513 ; 23 *How P. R.*, 294.

Nor, *Semble* in the same court, can any action be had upon it, except to issue an execution upon the judgment.

II.—No natural person is subject to the jurisdiction of the courts of this State unless, &c., *Comp. Stat. chap.* 72, *sec.* 36, *p.* 629, and the affidavit that the Defendant has property in the State made for the purpose of obtaining an attachment does not confer jurisdiction. It is the *fact* of his having property in the State that gives jurisdiction. 20 *How., P. R., p.*, 657.

III.—The complaint shows that on the 8th of September, 1862, when the action was commenced, and upon which the judgment of April 22, 1862, was rendered, the Defendant, Jacob Myers, had no property in this State to which an attachment, judgment or execution could attach, or upon which either could become a lien, or be in any manner affected. 15 *N. Y.*, (3*d Smith's*,) 475 ; 8 *Min. R.*, 318.

IV.—If, then, the Defendant, Jacob Myers, in the action commenced Sept. 8, 1862, had no property in the State, the District Court had no jurisdiction, and the judgment declared upon is a nullity. *Comp. Stat., chap.* 72, *sec.* 36, *p.* 629.

V.—The judgment ought not to have been rendered *in personam*, even if the Defendant had property in the State. It should have been rendered against the property of the Defendant. Such a proceeding is a proceeding *in rem*.

VI.—This action cannot be sustained in either view of the case ; for if the judgment is void for want of jurisdiction, and for want of property of the Defendant in this State, then the Plaintiff has failed, by his complaint, to show himself to be a creditor of Jacob Myers ; or if he could sustain his present action without first obtaining judgment upon the original cause of action, he has failed

to set forth a good cause of action upon such original cause, he has not stated what tract or how large a tract of land the Defen dant Jacob Myers obligated himself to convey, nor to what amount he has been damaged by the breach of that obligation.

VII.—The complaint shows that one of the tracts of land mentioned therein was conveyed to Susan R. Myers nearly or quite nine months before the making of the bond for the breach of which the judgment of April 22, 1863, was rendered, and one on the very day of the making of that instrument, and the latter was so conveyed to Susan R. Myers by the Plaintiff himself, and of his conduct in so conveying to her, he gives no explanation, save that " he did not then suspect."

VIII.—The Defendant Jacob Myers did not become a creditor of Nahum Stone by the execution and delivery of the bond mentioned in the complaint; he only became a creditor upon a breach of his obligation to deed on demand, and it does not appear from the complaint when that demand was made, whether before or after the conveyance to Susan R. Myers by Heman W. Stone. The statute of limitations would commence to run upon the penalty of the bond from the time of the demand and refusal to give the deed.

Points and authorities of Respondent.

I.—The allegations of the Complaint, not controverted by the answer, establish the fact that the Plaintiff was a creditor of Jacob Myers at the date of the bond, described in the complaint in this action, and on which the judgment in the prior action (also described in said complaint) was founded.

But aside from the admitted original merits of the Plaintiff's demand against Jacob Myers, the fact that Plaintiff was then such creditor, is not open to question in this action. It, and the amount of the demand, are, by the prior judgment against Jacob Myers, *res adjudicata*. In such prior action, the subject thereof was within the jurisdiction of the District Court, which acquired jurisdiction of the person of Jacob Myers in the manner prescribed by Statute. That judgment, for all the purposes of enforcing

it, is conclusive upon Jacob Myers and his wife, so long as it remains undisturbed by any proceedings to open or vacate it, just as much so as if it had been rendered upon a personal service of the summons in the manner prescribed by Statute; for the service of the summons was *complete* at the time specified in the order of publication. *Com. Stat.* 539, *Chap.* 60, *sec.* 51; *Sess. Laws of* 1862, *p.* 75, *ch.* 20.

The *fact* that Jacob Myers had property in this State at the time of the commencement of the prior action, is shown by the Complaint in this action, and not denied by the Defendants. There cannot, therefore be any question, but that every fact necessary to give the Court jurisdiction of the former action existed; and the property is bound by the judgment, whether the person is or not, for the purpose of the said action, and the object of the Statute authorizing such service of process on non-residents, is to bind the property and appropriate it to the payment of debts.

II.—The fact that the Plaintiff was a creditor of Jacob Myers being admitted, as well as established by the judgment, and the property being bound by the attachment and judgment, the Plaintiff is entitled to take and maintain any remedy at law or in equity which may be necessary to reach the property and convert it into money to pay the debt. He is not confined to process of execution on the judgment, but may use the powers of a Court of Equity, to remove fraudulent obstacles that lie between execution and the property.

III.—Jacob Myers having purchased and paid the consideration for the property described in the Complaint, and directed the same to be conveyed to his wife, the conveyances are fraudulent as to his creditors, of whom the Plaintiff is one. And though the legal title to the property is, by the conveyances vested in Mrs. Myers, a trust has resulted in favor of such creditors to the extent necessary to satisfy their demands. *Comp. Stat.*, 382, *chap.* 32, *secs.* 7 *and* 8.

IV.—Under our Statute *all* the creditors of the person paying the consideration, are entitled to its benefits.

V.—Should it be deemed material to inquire *when* the Plaintiff

became a creditor of Myers, the answer will clearly be, at the date of the bond on which the judgment is founded. That was the time when Myers received the consideration, when he was trusted, and obligated himself to convey the land described in the bond. From that moment he was the debtor of the Plaintiff as much so as if he had given his note payable at a future day, or on demand. The demand of the deed, and Myers' default, only matured the Plaintiff's right of action. It did not create the debt or obligation.

But it can scarcely be necessary to inquire when the Plaintiff's demand was created, or when it matured, for under the statute, and certainly under the undenied allegations of actual fraud on the part of Myers, the Plaintiff is entitled to a decree for the sale of so much of the property as shall be necessary to satisfy his judgment against Myers.

L. M. BROWN, Counsel for Appellant.

A. G. CHATFIELD, Counsel for Respondents.

*By the Court*—EMMETT, C. J.—Whether the Defendant Jacob Myers had property in the State to give the Court jurisdiction in the action mentioned in the complaint, wherein the Plaintiff recovered a judgment against him, is not a question that can be raised in this collateral way. We regard the fact of the judgment having been so rendered, as conclusive upon that question except in a direct proceeding in the action itself for relief. But even in this view, the question is of no practical importance to a non-resident Defendant, against whom judgment has been rendered, in any case in which the Court obtains jurisdiction by reason of his having property in the State; because, as it is property alone that confers jurisdiction in these cases, (and then only to the extent of such property,) it would seem to follow that the judgment would expend itself on the property which conferred,

40—vol. ix.

or aided in conferring, the jurisdiction, which would only embrace such as was within the State at the time the jurisdiction attached. It would not, therefore, seriously injure the Defendant in such an an action, even if there were, in fact, no property at the time to confer jurisdiction, because there would be nothing on which the judgment could be levied.

But such a judgment, though in form *in personam*, is in effect only a judgment *in rem*. It is a judgment for no other purpose than to reach the property which a non-resident may have in the State, but who is not personally served with process therein. It is confined exclusively to such property, and is of no further force when that is exhausted. Beyond this it is evidence of nothing; nor does it bind or conclude the Defendant in anything. An action could not be maintained on it in any other court here or elsewhere; nor, in my opinion, would the party in whose favor it was rendered be precluded thereby from still bringing another action on the original consideration, for any balance that might be due to him, after exhausting the property which was in the State at the time jurisdiction attached. To hold that a judgment thus rendered has any vitality after exhausting the only thing over which the Court rendering it had jurisdiction, is violative of a principle inherent in all free governments, and which constitutes an inflexible rule at common law, viz., that no one can be condemned unheard. It is not disputed that whatever of interest the Defendant Jacob Myers now has in the property sought to be reached by this action, he also had at the commencement of the action mentioned in the complaint in which the Plaintiff recovered a judgment, as therein stated. It is further virtually admitted that his interest in said property formed the sole foundation for such jurisdiction as the Court acquired in said former action, he having no other property in the State at the time. It is manifest, therefore, that in determining the real merits of the controversy between these parties, it would be of the utmost importance to ascertain whether the interest which the pleadings show the Defendant Jacob to have had in said land, was "property," within the meaning of the term as used in the statute, and as such liable to seizure on attach-

ment or execution.   Neither party, however, has thought it necessary to give prominence to this question, or indeed to do more than refer to it in very general terms, and we have no disposition to decide a question of so much importance upon such argument merely, especially as the case may be disposed of without touching the point referred to.

We have repeatedly recognized the doctrine, that in order to entitle a creditor to relief against a fraudulent disposition of property by his debtor, he must show himself to have been such creditor *at the time* the act was done which he claims to be in fraud of his rights.

Nor is our confidence in the soundness of this doctrine at all shaken by the difference which counsel for the Plaintiff has pointed out between our statute and that of the State of New York, from which ours is alleged to have been taken.   The statute of New York, it is true, puts the construction beyond question by declaring certain conveyances " fraudulent as against the creditors *at the time* of the person paying the consideration," while the statute of this State omits the words, " *at the time*."   We are of opinion that the doctrine has its foundation in principle, and not in a mere provision of statute ; and that if our statute on the subject was really drawn from that of New York, the omission referred to was not designed to inaugurate a different doctrine here, but rather occurred because it was not thought necessary to declare what was already well settled by numerous decisions.

The Defendants here insist that the Plaintiff was not a creditor of the said Jacob Myers, until after breach of the condition of the bond, on which the former action was brought ; and that it nowhere appears in this case when such breach occurred.   On the other hand, the Plaintiff contends that he became a creditor from the date of his bond ; and in this we think that the Plaintiff is right.   By the very terms of a bond the obligor acknowledges himself to owe, and the condition merely points out the way in which this admitted indebtedness may be avoided.   The debt cannot, in strictness, be said to *accrue* on breach of the condition —it *remains* if the condition be not complied with.   The fact

that the statute, or equity, interferes and prevents the collection of more than the damage really sustained, does not change the principle, but rather confirms it; because, but for such interference, the whole of the bond would be collected as of course. The liability is incurred by the making of the instrument, and the obligor is a debtor by his own acknowledgment under seal, from that time, and until he complies with its conditions.

But even this does not relieve the Plaintiff altogether from the objection that he was not a creditor at the time the conveyances were made, against which he seeks relief.

There are three of these conveyances—one long prior to the execution of the bond on which the Plaintiff recovered his judgment, another made by the Plaintiff himself, bearing date the same day as said bond, and the other made some time afterwards. They all run to the Defendant, Susan R. Myers, as grantee, and in every instance the consideration is alleged to have been furnished by the Defendant, Jacob Myers, and the deed made to his wife the said Susan, " with intent and design, and for the purpose of hindering, delaying and defrauding his creditors." And these allegations are not denied.

The Plaintiff prays that each and all of these conveyances be adjudged fraudulent as against him—that a trust therein be declared in his favor to the extent necessary to satisfy his judgment, that each be declared subject to such trust in the hands of said grantee ; and that the lands thereby conveyed, or sufficient thereof, be sold to satisfy his said judgment, costs, &c.     The Court below ordered judgment to be entered for the Plaintiff, for the relief demanded in the complaint, which, in our opinion, was entirely too broad, in view of the facts above referred to.     For whether or not the Plaintiff, after participating, as above stated, in one of the acts claimed to have been fraudulent, can take advantage of his own conveyance in this manner, or whether or not he would not, at any rate, have to show affirmatively to the satisfaction of the Court, that the bond actually preceded the conveyance of the same date (questions which it is not necessary to decide at this time), one thing is certain, the order for judgment

does include one conveyance, about which there can be no dispute in regard to its having been made prior to the time when the Plaintiff, according to his own showing, became the creditor of the Defendant, Jacob Myers; and this alone would render the order erroneous.

The Plaintiff insists, however, that he need not to depend upon the resulting trust to his use as a creditor, created by the statute; that the actual fraud alleged and not denied, entitles him to the relief he demands. We will not inquire into the merits of the point here made; suffice it to say, that we might admit the truth of the proposition it embraces, and still the order appealed from would be equally liable to the objection above stated; for whether the Plaintiff, as a creditor, claim relief under the statute, or on the more general ground of fraud, admitted by the state of the pleadings, it is quite as necessary in either case, before he is entitled to the relief he asks, that he should have shown himself a creditor *at the time* of the commission of the fraudulent act from which he seeks to obtain relief, and equally true that a judgment in accordance with the order here appealed from would not be justified in the one case more than in the other.

But might we not modify the order for judgment in respect to the objection above mentioned, and permit it to stand as to the remainder? There is no doubt that the statute would authorize such a course, but we prefer not to pursue it in this case. We could not do so without first deciding the question of property hereinbefore mooted, and about which we have purposely abstained from giving an opinion, without further argument. Moreover, the person most affected by a judgment against the Defendants in this action, is a married woman, resident of another State, who asks in any event to be permitted to amend the answer, so as to put in issue matters before passed without denial. It is true that a joint answer for both the Defendants was put in by the same attorney, but as she may never have been consulted even with regard to her answer, there is abundant reason why she should not be irrevocably bound by it, as would be the result were we to modify the order, as suggested.

The order for judgment must be reversed.