sections 1866 and 1867 of the Code of Civil Procedure. But these sections do not authorize the prosecution of such an action as the present one. The only other authority cited by the plaintiff to sustain the action is the case of Brady v. McCosker, 1 N. Y. 214. In the view we take of the case, it is not necessary for us to determine whether the plaintiff has brought himself within the principle of that case. The general rule was there recognized that equity would not entertain jurisdiction of an action to set aside a will on the ground of fraud, or on the ground of the testator's incompetency, where there was a perfect remedy at law; and it was because there was an outstanding, valid trust term in the whole estate, and a valid, outstanding lease of a part of the land, which would have prevented the plaintiff maintaining an action of ejectment against the devisee under the will, that the court in that case entertained jurisdiction of the action. We are of the opinion that the plaintiff here has a perfect remedy at law, under section 2653a of the Code of Civil Procedure. The moment the will is admitted to probate the plaintiff may have his action, and the question that will be determined there will be whether the writing produced is the last will of the testatrix. The fact that that cause of action does not accrue to the plaintiff until the will is admitted to probate is of no importance. The utmost relief that a court of equity would grant to the plaintiff would be to restrain the devisee from pleading as a defense the outstanding lease of the tenants. Or, if it granted more than that, it would be compelled to frame an issue, and send the case to a jury for trial. The action authorized under the section of the Code quoted is made triable before a jury, and the relief that the plaintiff seeks in this action can be granted to him there. When Brady v. McCosker was decided, there was no form of action available to the plaintiff, such as is now authorized by the Code. The present plaintiff has an ample remedy at law, and a court of equity should therefore refuse to entertain jurisdiction of the present action.

The judgment must be affirmed, with costs. All concur.

---

(18 Misc. Rep. 114.)

CITIZENS' NAT. BANK OF SARATOGA SPRINGS v. FONDA et ux.

(Supreme Court, Trial Term, Saratoga County. June, 1896.)

FRAUDULENT CONVEYANCES—EXISTING CREDITORS—CONTINGENT LIABILITIES.
    The holder of a note is a creditor of the indorser, within 2 Rev. St. p. 137, § 1, providing that every conveyance made with intent to hinder, delay, or defraud creditors shall be void, though the note is not due.

Action by the Citizens' National Bank of Saratoga Springs, N. Y., against Robert C. Fonda and Louise M. Fonda, to set aside certain deeds as in fraud of the grantor's creditors. Judgment for plaintiff.

Nash Rockwood and J. W. Houghton, for plaintiff.
A. W. Shepherd, for defendant.

McLAUGHLIN, J.   This action is brought to set aside two deeds, one dated October 31, 1889, and the other June 19, 1893, given by the defendant Robert C. Fonda to his wife, the other defendant, upon the ground that they were given with intent to hinder, delay, and defraud creditors.   The facts, so far as they are material to the questions involved, are as follows:   In May, 1887, one E. M. Crawford procured the plaintiff to discount a note for $1,500 made by him, and indorsed for his accommodation by the defendant Robert C. Fonda, and his mother, Esther M. Fonda.   This note was renewed from time to time, with the same indorsers, until about 1892, when Esther M. Fonda was relieved by reason of some statement or request made by the defendant Robert C. to the cashier of the plaintiff; and thereafter it was renewed, as it became due, with the defendant Robert C. alone as indorser, until December, 1893, when it was again renewed by the defendant Robert C. giving his note for $1,350 with Crawford as indorser.   Small payments had been made by Crawford at different times, so that the original amount had been reduced to this sum.   The note was not paid at its maturity; was subsequently put into judgment, and execution issued thereon, which was returned wholly unsatisfied.   At the time the original note was discounted, or between that time and the return of the execution, the defendant Robert C. was the owner of two pieces of real estate situate in the village of Saratoga Springs, one of them on Union avenue, and the other on Broadway.   These properties he transferred to his wife,—the Union avenue property by deed bearing date October 31, 1889, and the Broadway property by deed bearing date June 19, 1893.   The Broadway property is, and at the time of the transfer was, of the value of $12,500.   Upon the trial the complaint was dismissed, so far as it relates to the Union avenue property, and the question involved relates only to the validity of the conveyance of the Broadway property.   The consideration expressed in this deed is $1, and "other good consideration."   The "other good consideration" is the intent of the grantor to secure to his wife, in case of his death, that property to her, "in preference to any other legal claim."

The statute provides that every conveyance of property made with the intent to hinder, delay, or defraud creditors of their lawful suits, damages, etc., shall be void as against the creditors so hindered, delayed, or defrauded.   2 Rev. St. p. 137, § 1.   The question of a fraudulent intent is one of fact, and not of law.   Id. § 4.   The intent is the one thing upon which the validity of a conveyance must be tested when brought in review under this act.   The want of a valuable consideration is not alone sufficient to sustain the charge of fraudulent intent.   It is, however, an important fact to be considered when searching for the intent.   And if it be found that such conveyance includes all of the debtor's property, so that there is not enough left to pay his debts, then it is controlling evidence of a fraudulent purpose, as against his then existing creditors.   For this reason it has been repeatedly held that a voluntary conveyance by one of all his property, who is at the time indebted, is presumptively fraudulent.   Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082; Erickson v. Quinn, 47 N. Y. 410.   The fraudulent intent, under such circum-

stances, is a legal conclusion deduced from the fact that the debtor puts the only property he has beyond the reach of his creditors, and this conclusion is so strong that it will prevail against all other evidence.    It would be an idle ceremony to speculate upon the intent of a person who, in insolvent circumstances, conveys to his wife all of his property.    Evidence that his purpose was honest, or that he did not intend to defraud, does not overcome the fact that his creditors remain unpaid.    His purpose may have been honest.    He may have acted through ignorance, mistake, or misconception of the law, or he may have thought that the moral obligation to properly support his wife was more binding upon him than the legal obligation to pay his just debts.    Evidence to establish such facts might excuse him from moral condemnation, but are no excuse when his intent is subjected to a legal test.

The conveyance in question, being voluntary, without consideration, and covering substantially all of the property of the judgment debtor, so that there is nothing left out of which the plaintiff can collect its judgment, is presumptively fraudulent, if the plaintiff at the time the conveyance was made was a creditor.    This I do not understand to be seriously questioned by the defendants, but they insist that the defendant Robert C. Fonda was not a debtor of the plaintiff at the time the conveyance was made, and therefore the defendant had a perfect right to give away his property.    At the time the transfer was made the defendant was indorser upon a note which had been discounted by the plaintiff.    The note was not due, and until the note fell due a cause of action against the indorser could not be enforced.    Until the note became due the defendant's liability as indorser was contingent, and depended upon nonpayment by the maker, protest, and notice by the bank.    That the liability at the time of the conveyance was contingent, I think, however, makes no difference.    The term "creditor," as used in the statute, has been, and ought to be, liberally construed.    It should receive such an interpretation as will enable it to accomplish the design for which it was enacted.    And where a bank has been induced to loan money upon the responsibility of an indorser, and possibly upon his responsibility alone, it can fairly and justly claim the protection of this statute in reference to the indorser's property.    From the time a note is discounted until it is paid, provided it is protested and notice given in case of nonpayment, the indorser is as much a debtor as the maker.    The contract is that the indorser will pay, and the only thing that fulfills that contract is the actual payment.    If an indorser can escape liability by giving his property away before the note falls due, then he can, by his own act alone, not only violate, but cancel, the contract which he has made.    The term "creditor," as used in the statute, applies to every contract, and it matters not whether the liability under it is contingent or absolute.    Whoever has a demand founded on a contract, either express or implied, for the payment of money, if the contract be not performed, is a creditor, within the meaning of the statute;  and it is not necessary, in order to realize its benefit, that the demand be one which can legally be enforced at the time the conveyance is made.    "It has been re-

peatedly adjudged," says Judge Allen (Young v. Heermans, 66 N. Y. 384), "that a party bound by a contract whereof he may become liable to the payment of money, although his liability be contingent, is a debtor, within the meaning of the statute avoiding all grants made to hinder or delay creditors." Plaintiff having obtained judgment upon the note given in renewal of the original obligation, it stands in the position as if the first note had not been paid, and in law it must be treated as a creditor relating back to the date of the execution of the first note; and the fact that the defendant Robert C. was simply an accommodation indorser makes no difference. It is true that his liability as indorser at the time of the conveyance was only contingent, but it afterwards became absolute, and he thereupon became a debtor from the date of the original obligation. An indorser upon commercial paper, who makes a voluntary conveyance of all his property, falls as much within the provision of the statute relating to voluntary conveyances as the maker of the paper, and it makes no difference whether the debt is or is not due at the time of the conveyance. Van Wyck v. Seward, 18 Wend. 375; Moosbrugger v. Walsh, 89 Hun, 564, 35 N. Y. Supp. 550; Thompson v. Thompson, 19 Me. 244; Stone v. Myers, 9 Minn. 303 (Gil. 287); Carlisle v. Rich, 8 N. H. 44; Crane v. Stickles, 15 Vt. 252; Bay v. Cook, 31 Ill. 336; Post v. Stiger, 29 N. J. Eq. 558. See, also, McLaughlin v. Bank, 7 How. 220. It follows that the transfer in question cannot be supported upon the ground that when the conveyance was made the defendant Robert C. was not a debtor of the bank. I think, however, the facts in this case show actual fraud, and that the conveyance was made by defendants with the intent of placing the property transferred beyond the reach of the plaintiff, and in that view it matters not whether the debt was antecedent or subsequent to the conveyance. The legal presumption is that the defendants intended what is the natural and probable result of their own acts. But the court need not indulge in legal presumptions. The defendant Robert C. testified upon the trial that he gave the deed in question for the purpose of securing his wife, in case of his own death, "in preference to any other legal claim." In other words, he wanted her to have this property whether his debts were paid or not. And, if he had not so testified, the other facts developed upon the trial—his relations with Crawford, his knowledge of the business in which Crawford was engaged, and his financial condition—are all sufficient to establish a fraudulent purpose. It would be a sad commentary upon the law if a creditor standing in the position that this plaintiff does could not have the benefit of the statute, but must lose its debt in favor of a wife claiming under a voluntary grant from her husband. The law will approve of the generosity of the husband, but will insist that he must be just before he can be generous.

I think the plaintiff is entitled to judgment, so far as the conveyance of June 19, 1893, is concerned, as prayed for in the complaint, with costs.