[No. 12095.   Department One. — December 2, 1889.]

## C. W. MOORE ET AL., APPELLANTS, *v.* WILLIAM M. LENT ET AL., RESPONDENTS.

CORPORATIONS — LIABILITY OF DIRECTORS — CREATING DEBTS BEYOND CAPI-TAL STOCK. — In order to make the directors of a corporation personally liable, under section 309 of the Civil Code, for a debt created beyond the subscribed capital stock, it must appear that the corporation must have been indebted at the same time in an aggregate amount exceeding the amount of the capital stock.   The prohibited debts are ordinary subsisting debts in excess of the capital stock, and not the aggregate of the debts of the company created during its entire corporate existence.   The prohibition applies to debts in excess of all the subscribed capital stock, whether it has all been paid in, or only part of it, and regardless of the disposition which may have been made of it.   A purchase of mines for the full amount of the capital stock, to be paid for in the stock of the corporation, a portion of which only is paid in, does not make all debts thereafter created in excess of the subscribed capital stock.

ID. — NATURE OF CAPITAL STOCK — INDEBTEDNESS OF CORPORATION. — The subscribed capital stock of a corporation is the fund upon which the transactions of the corporation are to be made, and is a guaranty to creditors that all obligations to that amount will be met; but it cannot be considered as a debt of the corporation, whether paid in or not, in estimating the amount of indebtedness beyond which the directors of the corporation may make themselves personally liable.   Debts to be thus considered are only those created by voluntary act of the directors.

ID. — CONSTRUCTION OF STATUTES — PENAL LIABILITY. — A statute which provides for making one person individually liable for the debts of an-other, and prescribes how and under what circumstances he shall be held thus liable, is penal in its nature, and like other statutes which create a forfeiture or impose a penalty, is to be strictly construed against the liability.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*James A. Waymire,* and *Kellogg & King,* for Appellants.

*T. I. Bergin,* for Respondents.

PATERSON, J. — This action is based upon the following provision of the code: " The directors of corporations must not . . . . create debts beyond the subscribed cap-

ital stock. . . . . For a violation of the provisions of this section, the directors under whose administration the same may have happened (except those who may have caused their dissent therefrom to be entered at large upon the minutes of the directors at the time, or were not present when the same did happen) are in their individual and private capacity jointly and severally liable to the corporation, and to the creditors thereof in the event of its dissolution, to the full amount of the . . . . debt contracted."

The defendants were members of the board of directors of the South Mountain Consolidated Mining Company, a corporation organized under the laws of this state, and having a subscribed capital stock of ten million dollars, divided into one hundred thousand shares, all of which were issued as full-paid stock in part payment of the mines and other property of the corporation. The officers of the corporation borrowed large sums of money from the plaintiffs, who were partners in a banking business at Silver City, Idaho. All of the moneys borrowed by the corporation were repaid to plaintiffs, except the sum of $46,953.50. In February, 1876, and while this amount remained unpaid, the corporation became insolvent. A petition in bankruptcy was filed in the United States district court at San Francisco, the usual assignment was made, and the plaintiffs duly proved and filed their claim, but never received any dividends, the receipts from sales having been consumed in the payment of dividends to preferred creditors. During the months of July and August, 1875, when the indebtedness to plaintiffs was created, the corporation was in debt about two hundred thousand dollars. The defendants were present at all meetings of the directors when the indebtedness was incurred, and none of them caused any dissent to be spread upon the minutes. The court found that " the debt alleged in the complaint was not, nor was any debt, created by said corporation beyond its subscribed capital stock." The court held

that the defendants were not liable to the plaintiff in any amount, and judgment having been entered in their favor, plaintiff moved for a new trial, which was denied. The appeal is from the order and from the judgment.

The principal controversy here is as to the proper construction of the words "beyond the subscribed capital stock." Appellants contend that when the directors purchased the mines for ten millions of dollars to be paid in stock, they created a *debt* of ten millions of dollars, and when they issued all the subscribed capital stock in payment of that debt, they no longer had any subscribed capital stock, and every dollar of indebtedness subsequently created was a debt created "beyond the subscribed capital stock." It is conceded that both the property of a corporation and its subscribed capital stock are trust funds for the benefit of the creditors; but it is claimed that the legislature made, or intended to make, a distinction between capital which may consist of property of an uncertain, speculative value, and subscribed capital stock, which is payable only in money, and has a fixed, definite value, — that the directors can create debts so long as there is any subscribed capital stock, but when that is once exhausted all debts created are at the risk of the directors. It is urged that so long as the subscribed capital stock is not fully paid up, the directors and the creditors know just how much the stockholders may be compelled to contribute for the payment of debts that may be created.

It is contended by respondents that under the provisions of the section quoted above the directors cannot be made liable until after they have created a debt of ten million dollars; that when the mines were purchased and paid for the property took the place of the subscribed capital stock at a valuation of ten million dollars.

While such laws are to be commended, as in the interest of creditors and fair dealing, they are penal in their nature, and should be strictly construed, — at least, the liability should clearly appear.

The language of the statute does not, we think, indicate an intention on the part of the legislature to make the distinction contended for by appellant, and stated above. The prohibition applies to all the subscribed capital stock, whether it has all been paid in, or only part of it, and regardless of the disposition which may have been made of it. Thompson, in his Liability of Stockholders, section 11, says: "The capital stock of a corporation, which is subject to the operation of this rule, consists of all the stock for which the members have subscribed. Treating this stock as money, it is capable of subdivision into three funds: 1. Money which has been subscribed as a part of the capital stock and paid in; 2. Money thus subscribed, but not paid in; 3. Money thus subscribed and paid in, but afterwards divided among the members before all the debts of the corporation are paid. The reason why the capital stock of a corporation is deemed to embrace all the stock for which the members have subscribed, whether paid in or not, is, that since the members are not, in general, personally liable for the debts of the corporation, *this fund is the stake held out for the public, upon the faith of which the company obtains credit.*"

The provision under consideration was designed to operate as a check upon directors, and protect creditors from the effects of corporate recklessness and extravagance. The subscribed capital stock is the fund upon which the transactions of the corporation are to be made. It is a guaranty to creditors that all obligations up to that amount will be met, and the intention of the legislature seems to have been to control the corporate power of the directors to contract beyond that amount, and to render them individually liable to creditors when they exceed it in the amount of debts. All of the acts prohibited by the statute are voluntary acts of the members of the board of directors. The *debts* referred to are manifestly debts created by voluntary act of the directors, and the capital stock of the company is not such

a debt, because such stock must exist before corporate debts can be created. The prohibited debts are debts beyond the subscribed capital stock; they are ordinary subsisting debts in excess of the subscribed capital stock, and not the aggregate of the debts of the company created during its entire corporate existence.

It may be admitted that the true construction of the phrase under consideration is not very clear or satisfactory. In *Irvine* v. *McKeon*, 23 Cal. 474, it was said: " This statute provides for making one person individually liable for the debts of another, and prescribes how and under what circumstances he shall be held thus liable. Like other statutes which create a forfeiture or impose a penalty, it is to be strictly construed, and every intendment and presumption is in favor of the defendant in such cases."

Although the rule of strict construction does not apply under the code, as we feel bound to construe the statute, to render the defendants individually liable, the corporation must have been indebted in an amount in excess of ten million dollars. It is not claimed here that such an indebtedness exists. It is claimed by appellant that the defendants are liable on their own theory, because the property — the mines and mills — must be taken at its actual value, which is less than one hundred thousand dollars. It is sufficient to say in answer to this that we have been unable to find anything in the record to show the value of the mine at the time it was taken, except the amount that was paid for it. The court found that the indebtedness alleged in the complaint was not beyond its subscribed capital stock. This finding is conclusive, considering the contention of the appellant to be sound, —a matter which we do not decide.

Our construction of the language of the section quoted above renders it unnecessary for us to notice other points made by appellant.

Judgment and order affirmed.

WORKS, J., and McFARLAND, J., concurred.

Hearing in Bank denied.