[Civ. No. 3006.　Second Appellate District, Division Two.—November 4, 1919.]

## MINNIE J. HORTON-HOWARD, Appellant, v. F. C. PAYTON et al., Respondents.

[1] UNLAWFUL DETAINER—BREACH OF COVENANT OF LEASE—NECESSITY FOR DEMAND.—Before an action of unlawful detainer to recover the possession of land for breach of a covenant to plant all the land to beets can be maintained, it is necessary that a demand or notice requiring possession be given and that it be served as required by section 1162 of the Code of Civil Procedure.

[2] ID.—VIOLATION OF COVENANT OF LEASE — ABILITY TO PERFORM AFTER DEMAND—FORM OF DEMAND NECESSARY.—Where the violated condition or covenant of a lease is one that can be performed, the statute provides for a written notice in the alternative, namely, a notice "requiring the performance of such condition or covenant or the possession of the property"; but where the condition or covenant cannot afterward be performed, the statute says that no notice "demanding the performance of the violated conditions or covenants of the lease" need be given; that is, the notice in such case need not be in the alternative, but it will be sufficient simply to give the three days' notice demanding "the possession of the property." Such demand for possession is a statutory prerequisite to any forfeiture of the lease.

---

1. What is unlawful detainer, note, 120 Am. St. Rep. 32.

[3] ID.—FORM OF NOTICE.—No particular words are prescribed for a demand for possession, and no special form is indispensable. Any written demand is sufficient if the person to whom it is given, as a person of common understanding, must understand from it that the landlord is absolutely and unconditionally demanding possession of the demised premises.

[4] ID.—LETTER BY LESSOR'S ATTORNEY—INSUFFICIENT DEMAND FOR POSSESSION.—A letter written by the lessor's attorney to the lessees of a ranch saying, "You have repeatedly violated the terms of this lease and she demands possession. You have sold water, which you had no right to do, and have made no accounting for same. You will please now make a full statement giving details of water sold from the premises, and remit to her. Again, the ranch you know very well was to be all put into beets which you have not done. Please let me hear from you at once," is not sufficient as a demand for possession or notice to quit to effect a forfeiture of the lease.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

Dixon L. Phillips and Victor Ford Collins for Appellant.

G. P. Adams for Respondents.

FINLAYSON, P. J.—This is an action of unlawful detainer. Plaintiff appeals from a judgment in favor of defendants. Defendants claim the right of possession under a written lease executed to them, as lessees, by plaintiff and one Helen A. Wright, as the lessors, whereby defendants leased from plaintiff and her colessor, for the term of five years, a twenty-five acre ranch near Norwalk, in Los Angeles County, agreeing to plant all the ranch to beets, farm it in a workmanlike manner, and, as rent, pay the lessors one-fourth of all the crops raised. Helen A. Wright, one of the colessors, has since conveyed all of her interest to plaintiff. Plaintiff alleges that defendants breached their covenant to plant all the ranch to beets, in this, that, in the year 1918, defendants planted a part of the land to corn; also that defendants committed waste in that they unlawfully diverted from the leased premises water developed thereon and used or sold it for use on other lands.

At the outset we are met with respondents' objection that no demand for possession or notice to quit, as required by the statute, was ever served upon either of them. We think this objection is well taken, and that it is fatal to any recovery by appellant.

The only attempted demand for possession was that made by plaintiff's counsel in a letter written and mailed by him at Oakland, California, dated September 3, 1918, and addressed to defendants at Norwalk, in Los Angeles County. That letter was as follows: "F. C. Payton and C. A. Payton, Norwalk, Los Angeles Co., California. Gentlemen: Mrs. Minnie J. Horton of 551 Crofton avenue, this city, has placed in my hands the 'Lease' between you and her under date of the 10th day of August, 1916, to the land and premises known as the 'Helen Williams' ranch, in Los Angeles Co., California, and which you are now in possession. She has also placed in my hands the correspondence relative to same. You have repeatedly violated the terms of this 'Lease' and she demands possession. You have sold water, which you had no right to do, and have made no accounting for same. You will please now make a full statement giving details of water sold from the premises, and remit to her. Again, the ranch you know very well was to be all put into beets which you have not done. *Please let me hear from you at once.* Yours very truly, Dixon L. Phillips, attorney for Mrs. Minnie J. Horton." (The italics are ours.) It was stipulated that the writer of this letter, Mr. Phillips, was acting as plaintiff's agent.

It may be assumed that the letter was delivered to one of the defendants, F. C. Payton—doubtless by the letter-carrier—for, on September 9, 1918, F. C. Payton wrote a letter to Mr. Phillips acknowledging receipt of his letter of the 3d instant, denying that the terms of the lease had been violated, and stating that he expected to hold the ranch until the expiration of the term of the lease.

The action is brought under subdivisions 3 and 4 of section 1161 of the Code of Civil Procedure. By subdivision 3 it is provided that a tenant is guilty of unlawful detainer when he continues in possession after a neglect or failure to perform other conditions or covenants than the one for the payment of rent and three days' notice, in writing, requiring the performance of such conditions or covenants, or the possession of the property, shall have been served upon him; but if

"the conditions and covenants of the lease, violated by the lessee, cannot afterward be performed, then no notice, as last prescribed herein, need be given to said lessee . . . demanding the performance of the violated conditions or covenants of the lease." Subdivision 4 provides that any tenant committing waste upon the demised premises, contrary to the conditions or covenants of his lease, thereby terminates the lease, and the landlord, "upon service of three days' notice to quit upon the person or persons in possession," shall be entitled to restitution of the premises.

[1] The covenant to plant beets, the breach of which is here complained of, was one that, so far as the crop-year 1918 was concerned, could not be performed after any demand for possession that plaintiff might make at the time when the letter from Mr. Phillips, addressed to defendants at Norwalk, was mailed. Therefore, it was not necessary that any demand or notice that might be served upon defendants should require the performance of the covenant to plant the beets for that year. It was necessary, however, that a demand or notice requiring possession be given, and that it be served as required by section 1162. [2] Where the violated condition or covenant is one that can be performed, the statute provides for a written notice in the alternative, namely, a notice "requiring the performance of such conditions or covenants or the possession of the property"; but where the condition or covenant cannot afterward be performed, the statute says that no notice "demanding the performance of the violated conditions or covenants of the lease" need be given (subd. 3, sec. 1161); that is, the notice, in such case, need not be in the alternative, but it will be sufficient simply to give three days' notice demanding "the possession of the property." Such demand for possession is a statutory prerequisite to any forfeiture of the lease, even though notice of the alternative requirement—performance of the condition or covenant—need not be given. As said by the court in *Schnittger* v. *Rose,* 139 Cal. 662, [73 Pac. 451] : "Where, however, the covenants cannot be performed, the law recognizes that it would be an idle and useless ceremony to demand their performance, and so dispenses with the demand so to do. And this is all that it does dispense with. It does not dispense with the demand for the possession of the premises. It requires that in any event." So, also, where, as here, the plaintiff complains of

"waste," contrary to the conditions or covenants of the lease, as, for example, the unlawful diversion of water contrary to the terms of the lease, the statute requires, as a condition precedent to the maintenance of the action, a "three days' notice to quit." (Subd. 4, sec. 1161.)

The right to recover possession in an action such as this is based upon the idea that the tenant has forfeited his leasehold. The service upon defendants of such a demand for possession, or a notice to quit, as is contemplated by the statute, was a condition precedent to the forfeiture of defendants' leasehold interest. Forfeitures are not favored by the courts; every intendment and presumption is against the person seeking to enforce the forfeiture; statutes creating forfeitures must be strictly construed; and one who seeks the summary remedy of unlawful detainer allowed by the statute must bring himself clearly within its terms. (*Savings & L. Soc.* v. *McKoon,* 120 Cal. 179, [52 Pac. 305]; *Opera House Assn.* v. *Bert,* 52 Cal. 571; *Lacrabere* v. *West,* 141 Cal. 554, [75 Pac. 185].)

[3] What is a sufficient notice to quit or demand for possession is stated in the several text-books on the law of landlord and tenant, and the authors do not seem to differ materially as to what the notice should contain. No particular words are prescribed, and no special form is indispensable. Doubtless any written demand is sufficient if the person to whom it is given, as a person of common understanding, must understand from it that the landlord is absolutely and unconditionally demanding of him possession of the demised premises. It must, however, clearly, positively and unequivocally disclose the intention of the landlord to repossess the premises. It must be positive, decisive, and without ambiguity. In brief, the language must be such as to convey to the tenant notice that it is the positive and unequivocal intention of the landlord that he shall quit and surrender possession, without any alternative choice whatever. The landlord must use language upon which the tenant can safely act. In the analogous case of notice from a tenant to his landlord of an intention to surrender the demised premises, Justice Bowen, in the English case of *Gardner* v. *Ingram,* 61 L. T. (N. S.) 729, holding the notice to be insufficient, discusses the essentials of a sufficient notice, saying: "I think

it is very necessary that in a notice to quit there should be plainness of speech; that is, it must be plain and unequivocal in its terms, leaving no doubt as to the intention of the party giving it. The effect of such a notice is to put an end to the relation of landlord and tenant. Therefore, the landlord has a right to know whether the tenant is really going or not. If, instead of adopting that course, the tenant uses language which is ambiguous, makes use of expressions which leave matters at the conclusion of the term contingent on something to be done or some arrangement to be made, there is no sufficient notice to quit. We are asked to place a business construction upon this notice. In my opinion there was no business intended by it. The tenant used language on which the landlord could not safely act.''

[4] Turning now to the letter addressed to defendants by plaintiff's attorney. Referring to the lease and to his client, the attorney says: ''You have repeatedly violated the terms of this lease and she demands possession.'' He does not say that she ''hereby'' demands possession. Read in the light of what follows in the letter, its author leaves it in doubt whether his client, through him as her agent, is actually thereby unconditionally demanding possession, or whether he is simply, by way of recital, notifying defendants that his client desires possession, or, in lieu of that, satisfaction in some form for the alleged breaches of defendants' covenants. After telling defendants that they had wrongfully sold water and had made no accounting therefor, the attorney proceeds to say: ''You will please now make a full statement, giving details of water sold from the premises, *and remit to her.*'' And he concludes his letter with the words: ''Please let me hear from you at once.'' Obviously, plaintiff was not entitled, because of the ''waste'' complained of, to have the lease declared forfeited, regain possession and treble damages for the unlawful detention arising out of such waste, and, in addition thereto, the sum which Mr. Phillips' letter in effect demands, namely, compensation for the water claimed to have been wasted. The acceptance of such compensation, had any been made, would have been a waiver of any right to demand and regain possession based upon the alleged waste of water contrary to the conditions and covenants in the lease. The demand that defendants ''remit'' to plaintiff, coupled with

44 Cal. App.—8

the statement at the end of the letter, "Please let me hear from you at once," was calculated to engender in defendants' minds the thought that, by his letter to them, the attorney was not thereby unequivocally demanding, for and on behalf of his client, the unconditional surrender of possession, but that he was suggesting some alternative arrangement and inviting defendants to express themselves with regard thereto. The language of the notice was not a direct, positive, decisive, and unambiguous demand for possession or notice to quit. The attorney did not use language on which the tenants could safely act.

Moreover, the letter was written by an attorney. It must be assumed, therefore, that he understood the character of the notice necessary to effect a forfeiture of the lease, as well as the import of the language which he used. If it was his purpose to give notice to quit or to make an unconditional demand for possession, he well knew that such a notice or demand must be clear, certain, and unequivocal as to such intention. He knew that nothing less would satisfy the terms of the statute. With this knowledge he wrote the letter. It is neither certain, definite, nor unequivocal as an intention on plaintiff's part to demand unconditional surrender of the premises. It cannot therefore be presumed that Mr. Phillips intended that the letter should be a notice to quit. On the contrary, it is rather to be assumed that he left that matter, with the question of compensation to his client for the wasted water, for future arrangement, and, with that idea in view, he was throwing out a suggestion for negotiations that possibly might lead to some mutually satisfactory adjustment of their differences. This conclusion is further strengthened by the fact that when the action was commenced plaintiff's attorneys apparently were of the opinion that, because the broken conditions and covenants were incapable of performance at any time after the date of Mr. Phillips' letter, no demand for possession or notice to quit was necessary. Entertaining such belief, the complaint, as originally filed, omitted all reference to any demand. It was not until the day of the trial that plaintiff, with leave of court, amended her complaint by adding an allegation to the effect that more than three days prior to the commencement of the action she had made a demand for possession.

We think the letter to defendants was not sufficient as a demand for possession or notice to quit to effect a forfeiture of defendants' lease.

Judgment affirmed.

Sloane, J., and Thomas, J., concurred.